232 N.J. Super. 144 (1989)
556 A.2d 811
LINDA MOREY, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF ALBERT H. MOREY, DECEASED, PLAINTIFF-APPELLANT,
v.
JOSEPH C. PALMER, JR. AND JERSEY CENTRAL POWER & LIGHT CO., DEFENDANTS, AND PATROLMAN JOSEPH VINCI AND BOROUGH OF SOUTH TOMS RIVER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 14, 1988.
Decided April 12, 1989.
*147 Before Judges PETRELLA, GRUCCIO and LANDAU.
William J. Hill, attorney for appellant.
Parker, McCay & Criscuolo, attorneys for respondents (Stacy L. Moore, Jr., on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
Plaintiff Linda A. Morey, Administratrix of the Estate of Albert H. Morey, Deceased, appeals the trial court's grant of summary judgment in favor of defendants dismissing her complaint. Plaintiff settled with the two other defendants and attempts to recover damages from defendants Joseph Vinci and Borough of South Toms River for the death of her husband, Albert H. Morey. Plaintiff alleges that Vinci's negligent performance of his duties as a Toms River police officer was a direct or proximate cause of decedent's death. The events leading to decedent's death are essentially undisputed.
On October 3, 1984, at approximately 5:15 p.m., Patrolman Vinci responded to a call that there was a pedestrian in the middle of Route 530, Dover Road, Berkeley Township, constituting a traffic hazard. Upon arrival at the scene, he observed decedent staggering in the middle of the road. Vinci ascertained that decedent was intoxicated and ordered him to leave the roadway  decedent complied. Vinci then determined that the traffic hazard had been eliminated and left the scene. At approximately 8:55 p.m., decedent was struck and killed by a truck one-quarter of a mile from the place where Vinci had ordered him out of the roadway 3 hours and 40 minutes earlier.
*148 Defendants moved for summary judgment asserting that Vinci had no duty to decedent and alternatively, that both defendants are immune from liability under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et. seq. The trial court agreed and granted the motion.
A trial court may grant a motion for summary judgment if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2. Inferences are to be drawn against the movant in favor of the party opposing the motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74-75 (1954). Specifically, with respect to summary judgment motions based on municipal tort immunities,
[i]t is well established that the burden is on the public entity both to plead and prove its immunity under our Act, see Ellison v. Housing Auth. of South Amboy, 162 N.J. Super. 347, 351 (App.Div. 1978); and that to succeed on a motion for summary judgment, the entity must "come forward with proof of a nature and character [that] would exclude any genuine dispute of fact ..." Id. However, once a moving party has met that burden, summary judgment is warranted and, indeed, desirable, as a matter of judicial economy. [Kolitch v. Lindedahl, 100 N.J. 485, 497 (1985)].
Here, the trial judge ruled that the New Jersey Tort Claims Act precluded any further responsibility on the part of defendants. Although the court failed to specify which particular provision of the Tort Claims Act it relied upon to reach its conclusion, this court is capable of making such a determination.
To the extent that the trial court found no source of a duty, we find a lack of support for the grant of summary judgment. N.J.S.A. 26:2B-16 states: "Any person who is intoxicated in a public place may be assisted to his residence or to an intoxication treatment center or other facility by a police officer or other authorized person." (Emphasis supplied). This permits an officer, in his discretion, to remove an individual from a public place to an intoxication treatment center if the officer determines that the person is intoxicated. The next paragraph of N.J.S.A. 26:2B-16 provides: "Any person who is *149 intoxicated in a public place and who a police officer has reason to believe is incapacitated shall be assisted by the police officer to an intoxication treatment center or other facility." (Emphasis supplied). Therefore, when an officer determines that an individual is not only intoxicated but also incapacitated, the statute imposes a duty upon the officer to remove an individual from a public place to an intoxication treatment center.[1] This statute, however, also provides a specific immunity. N.J.S.A. 26:2B-16.
Under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, et seq., immunity for governmental entities "is the dominant consideration." Hake v. Manchester Tp., 98 N.J. 302, 317 (1985). The general immunity under this act is found in N.J.S.A. 59:2-1. However, N.J.S.A. 59:2-2 makes municipalities liable to the same extent as an individual employee. Properly applied, N.J.S.A. 59:2-2 qualifies the general immunity of N.J.S.A. 59:2-1 by focusing on the type of conduct enjoying the immunity. "We have held that the plain meaning of N.J.S.A. 59:2-1 firmly establishes that `immunity is the dominant consideration of the Act.' (Citations omitted). Even when one of the Act's provisions establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity." Rochinsky v. State of N.J. Dept. of Transp., 110 N.J. 399, 408 (1988).
Plaintiff is correct in her assertion that police officers do not enjoy immunity for negligent performance of ministerial duties. Praet v. Borough of Sayerville, 218 N.J. Super. 218 (App.Div.), certif den. 108 N.J. 681 (1987). Likewise, police officers are not immune from liability for injuries arising from their willful misconduct. Wood v. City of Linden, 218 N.J. Super. 11 (App.Div. 1987).
*150 Plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment predicated upon defendant's immunities under N.J.S.A. 59:1-1, et seq., because plaintiff's cause of action arises out of pure negligence and not failure to arrest. Plaintiff relies upon Suarez v. Dosky, 171 N.J. Super. 1 (App.Div. 1979), certif. den. 82 N.J. 300 (1980), as precedent for imposing liability on police officers for injuries resulting from their failure to remove plaintiffs from a hazardous situation.
In Suarez, police officers responded to an accident which occurred on Interstate 80 where a vehicle had become inoperable. The officers failed to remove a mother and a number of small children from a position of obvious peril to a place of relative safety off the eight-lane interstate after being specifically asked to do so. As a result the mother and her child were struck and killed while attempting to reach an exit ramp only a few minutes after officers refused to assist them. Id. at 6. In that case, liability was based upon the failure of officers in performance of a ministerial duty to render aid. Id. at 9-10.
The difference between the present factual scenario and that found in Suarez is that the officers in Suarez were duty-bound to render aid, particularly when they were requested to do so. Vinci was not responding to an accident scene. Decedent was evidently able to understand, respond to and comply with Vinci's orders to leave the highway. Ultimately, he was struck and killed 3 hours and 40 minutes later. Vinci was only duty-bound to remove decedent to an intoxication treatment facility if he determined that decedent was incapacitated. The basis of defendants' immunity arises from Vinci's discretionary determination that decedent was not incapacitated.[2] The officers in Suarez simply were required to perform a *151 ministerial act to comply with their duty. Here, any duty to physically remove decedent and thus substantially interfere with his liberty would arise only after the officer made a judgment decision respecting his incapacity. If there is causality, it would have to arise from that asserted error in judgment, 3 hours and 40 minutes before the accident but not from a ministerial act.
Praet is distinguishable on its facts. There, the officer's liability was based on negligence while rendering aid and failure to follow proper procedures in extricating a victim from an accident scene. Praet, 218 N.J. Super. at 221-222. Here, Vinci responded to a call that an individual was obstructing traffic. His duty required a weighing of decedent's liberty interests against an evaluation of his mental and physical capacities. There is no proof of decedent's incapacity at 5:15 p.m. that would support the questionable leap to causality at 8:45 p.m. since decedent was able to respond to Vinci's commands.
Police officers in the field have to make a myriad of judgment calls in the course of the performance of their everyday duties. While trained to make those decisions, they, like all humans, will make errors of judgment. The question here is to what extent will the law provide immunity for those errors.
A "ministerial act" is defined as "[o]ne which a person performs in a given state of facts in a prescribed manner in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done." Black's Law Dictionary, 1148 (4th ed. 1968). Applying this definition to the question of Vinci's immunity, it is clear that his determination was discretionary and contingent upon his use of judgment.
Furthermore, our Supreme Court recently observed that "even if a particular governmental activity is labeled `ministerial' *152 it does not automatically lose its immune status." Rochinsky, 110 N.J. at 412. That case examined the legislative intent of the Tort Claims Act.
The Comment to this section reveals the Legislature's overriding objective. It states that N.J.S.A. 59:2-1(a) "provides that the basic statutory approach of the [Act] shall be that immunity of all governmental bodies in New Jersey is re-established." In drafting section 2-1(a) the Legislature expressly adopted the reasoning of the California Law Revision Commission which is embodied in the California Tort Claims Act, Cal. Gov't Code § 810 et seq. The paramount concern was that a statute imposing general liability, limited only by specified statutory immunities, would provide public entities with little basis on which to budget for the payment of claims and judgments for damages. The Comment rejected the concept of a statute that imposed liability with specific exceptions, expressing concern that such a statute would greatly increase the amount of litigation and the attendant expense that public entities would face. Instead, the Attorney General's Report recommended legislation providing "that public entities are immune from liability unless they are declared to be liable by an enactment." N.J.S.A. 59:2-1 Task Force Comment. [Id. at 407-408; footnote omitted].
Vinci's decisions in the field were protected under N.J.S.A. 59:3-2(d) and N.J.S.A. 59:3-5. Although it is true that a municipal police officer does not constitute a high-ranking public employee, these provisions of the New Jersey Tort Claims Act are not always limited to such individuals. Brown v. Brown, 86 N.J. 565, 577 (1981). Discretionary decisions of officers in the field may subject a municipality to claims equal to or in excess of those resulting from the errors in judgment or discretion exercised by high-ranking public employees. Their decisions may materially affect the efficient distribution of a scarce police personnel resource.
This fact gives rise to the immunity under N.J.S.A. 59:3-2(d) and N.J.S.A. 59:3-5.[3] Concededly, N.J.S.A. 59:3-2(a) limits the *153 immunity for discretionary decisions depending upon the nature and range of decisions made by a public officer. Burke v. Deiner, 97 N.J. 465 (1984). We held in Longo v. Santoro, 195 N.J. Super. 507, 517 (App.Div.), certif. den. 99 N.J. 210 (1984), that officers may also enjoy immunity for actions elsewhere specified. There is no question that N.J.S.A. 26:2B-16 provides an officer great latitude when determining how to handle a publicly intoxicated person. Inherent in that discretion is the realization that police officers are themselves a scarce resource and in a large measure their duties stretch them to the outer limits of human capabilities. While on patrol, officers must constantly balance the extent to which they pursue possible minor offenses and other routine daily problems or remain available for patrolling against more urgent offenses.
Subject to the limitations discussed in Praet and Santoro, an officer's decision under N.J.S.A. 26:2B-16 whether to render aid to an intoxicated individual is protected under N.J.S.A. 59:3-2(d) and N.J.S.A. 59:3-5. We hold that on these facts, Vinci had no mandatory duty beyond that of physically getting decedent off the highway at 5:15 p.m. Absent special circumstances a general duty to render aid arises only in instances where the failure to render aid is palpably unreasonable.[4] Under the present facts no such argument can be posited. Any connection between decedent's physical state at the time Officer Vinci responded and 3 hours and 40 minutes later is tenuous *154 at best. There is no showing that Officer Vinci acted unreasonably.
Alternatively, Officer Vinci received immunity protection from both N.J.S.A. 59:3-3 and the specific immunity found in N.J.S.A. 26:2B-16 itself. These immunities are similar in operation and are focused on the officer in his law-enforcement function.[5] So long as Officer Vinci performed some enforcement act in the chain of events leading to plaintiff's injury, subsequent omissions will also be protected under the immunity. "When a sequence of events is involved, one enforcement event which constitutes an `act' will stamp the entire sequence as an `act' regardless of other events which involve failures to act." Marley v. Palmyra Bor., 193 N.J. Super. 271, 292 (App. Div. 1983). Here, Officer Vinci's discretionary election to limit his response to ordering and escorting decedent off the roadway is a sufficient "act" to secure the immunities of N.J.S.A. 59:3-3 and N.J.S.A. 26:2B-16. Therefore, even if Officer Vinci was negligent in determining whether decedent was incapacitated, so long as he made that determination in good faith N.J.S.A. 59:3-3 will protect him from liability. Id. at 295. Similarly, the specific immunity found in N.J.S.A. 26:2B-16 also applies to both the decision to remove an intoxicated individual and the determination as to his incapacitation.
Marley defines "good faith" as "honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong." Id. at 294. Applying this definition to the present situation demonstrates *155 that Officer Vinci's actions are clearly within the ambit of N.J.S.A. 59:3-3.
The error, if any, in determining whether decedent was incapacitated at the time Vinci responded is not actionable due to the immunity protection afforded such decisions. It follows a fortiori that absent Vinci's liability a dismissal against the municipality was also warranted. The grant of summary judgment is affirmed.
NOTES
[1] The record does not establish whether such a facility is available in the general vicinage of the municipality. However, for the purpose of this case, the availability of the facility is irrelevant.
[2] N.J.S.A. 26:2B-8 defines incapacitated as: "`Incapacitated' means the condition of a person who is: a. as a result of the use of alcohol, unconscious or has his judgment so impaired that he is incapable of realizing and making a rational decision with respect to his need for treatment, b. in need of substantial medical attention, or c. likely to suffer substantial physical harm."
[3] N.J.S.A. 59:3-2(d) provides: "A public employee is not liable for the exercise of discretion when, in the face of competing demands, he determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public employee was palpably unreasonable."

N.J.S.A. 59:3-5 (Adoption or failure to adopt or enforce any law) reads: "A public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." (Emphasis supplied).
We note that no municipal ordinance has been called to our attention.
[4] We note that N.J.S.A. 59:5-5 (Failure to make arrest or retain person arrested in custody) which provides "[n]either a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody" is inapplicable since N.J.S.A. 26:2B-16 specifically indicates that "[a] person assisted to a facility pursuant to the provisions of this section, shall not be considered to have been arrested and no entry or other record shall be made to indicate that he has been arrested." (Emphasis supplied).
[5] N.J.S.A. 59:3-3 reads: "A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

N.J.S.A. 26:2B-16 provides an immunity reading: "All persons acting under the provision of this section shall be considered as acting in the conduct of their official duties and shall not be held criminally or civilly liable for such acts."